**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NORTHBROOK PARK DISTRICT, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MR. DAVID'S FLOORING INTERNATIONAL, LLC, DIVERZIFY+ LLC f/k/a MR. DAVID'S FLOORING INTERNATIONAL, LLC, PCI FLORTECH INC., VORTEX COMMERCIAL FLOORING, INC., CONSOLIDATED CARPET ASSOCIATES, LLC, COMMERCIAL CARPET CONSULTANTS, INC., MICHAEL P. GANNON, DELMAR E. CHURCH, JR., ROBERT A. PATREY, JR., and KENNETH R. SMITH,<br><br>Defendants. | Civil Action No. 20-cv-07538<br><br>Hon. Robert M. Dow, Jr. |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD**

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................1

II. CLASS COUNSEL DEDICATED CONSIDERABLE RESOURCES TO THIS MATTER AND FACED SUBSTANTIAL RISKS TO SUCCESSFULLY RESOLVE THIS CASE ....................................................................................2

A. Class Counsel Conducted an Extensive Pre-Suit Investigation ..............................2

B. Plaintiff's Class Action Complaints and Discovery ..............................................3

C. Class Counsel Successfully Located a Cooperating Witness .................................6

D. Settlement Negotiations ..........................................................................................7

III. THE REQUESTED FEE AWARD IS REASONABLE AND APPROPRIATE................8

A. The Requested Fee Award is Fair and Reasonable as a Percentage of the Settlement Fund ..............................................................................................8

1. The Requested Fee is Consistent with the Market Rate Approved by Courts in Similar Cases..........................................................................9

2. Class Counsel Devoted Substantial Resources to This Case and Achieved an Exceptional Outcome ....................................................11

3. Class Counsel Faced Substantial Risk of Nonpayment and the Stakes of This Litigation Were High ..................................................14

4. Class Counsel's Agreement with Plaintiff Provided that Fees Would Be Paid on a Contingency Basis...........................................18

B. A Lodestar Cross-Check Confirms that the Fee Requested is Reasonable ...........19

IV. CLASS COUNSEL'S LITIGATION EXPENSES WERE REASONABLY INCURRED AND REIMBURSEMENT SHOULD BE APPROVED............................21

V. THE SOLE CLASS REPRESENTATIVE SHOULD RECEIVE THE REQUESTED SERVICE AWARD FOR ITS CONSIDERABLE TIME AND EFFORT ....22

VI. CONCLUSION....25

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)............................................................... 8

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)........................................................... 21

## United States Circuit Court Of Appeals Cases

*Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ........................................................................................ 8, 9

*Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420 (7th Cir. 1993) ........................................... 17

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ............................................................ 20, 22, 24

*E.E.O.C. v. G-K-G, Inc.*, 39 F.3d 740 (7th Cir. 1994)................................................................ 17

*Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560 (7th Cir. 1994) ................................................ 14

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)............................................................................ 9

*Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991)........................................................... 20

*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) .................................................. passim

*In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741 (7th Cir. 2011) ....................................... 14

*Jeffboat, LLC v. Dir. Office of Workers' Comp. Programs*, 553 F.3d 487 (7th Cir. 2009).......... 20

*Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949 (7th Cir. 2019) ...................................... 20

*Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013) ................................... 18, 19

*Sommerfield v. City of Chicago*, 863 F.3d 645 (7th Cir. 2019) .................................................... 20

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2002) .......................................................................... 10

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ........................................................ 9, 10

**United States District Court Cases**

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
Nos. 07-cv-2898, et al., 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)........................................... 24

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545 (N.D. Ga. 2007) ........... 14

*Hale v. State Farm Mutual Automobile Ins. Co.*,
No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)............................................ 9, 18

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ........................................................................................ 13

*In re Broiler Chicken Antitrust Litig.*,
No. 16 C 8637, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ....................................... 7, 10, 15, 19

*In re Broiler Chicken Grower Antitrust Litig.*,
No. 06:20-MD-02977 (E.D. Okla. Feb. 18, 2022) (Dkt. No 531) ............................................... 24

*In re Cabletron Sys., Inc. Secs. Litig.*, 239 F.R.D. 30 (D.N.H. 2006) ......................................... 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
MDL No. 1917, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ..................................................... 14

*In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015)................ 9, 10, 14, 19

*In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739 (E.D. Pa. 2013)........................................... 10

*In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004).. 16

*In re Lithotripsy Antitrust Litig.*,
No. 1:98-cv-08394, 2000 WL 765086 (N.D. Ill. June 12, 2000)................................................. 10

*In re Loestrin 24 Fe Antitrust Litig.*,
MDL No. 2472, 2020 WL 4035125 (D.R.I. July 17, 2020) ....................................................... 24

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
MDL No. 2328, 2015 WL 4875464 (E.D. La. 2015) ................................................................. 10

*In re Ravisent Techs., Inc. Sec. Litig.*,
No. 00-cv-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005)...................................................... 12

*In re Ready-Mixed Concrete Antitrust Litig.*,
No. 1:05-cv-00979, 2010 WL 3282591 (S.D. Ind. Aug. 17, 2010)....................................... 10, 21

*In re Southeastern Milk Antitrust Litig.*,
No. 2:08-MD-1000, 2013 WL 2155387 (E.D. Tenn. May 13, 2013)........................................... 10

*In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119 (N.D. Ill. 1990)..... 16

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)................................. 2, 6, 12, 20

*Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226 (N.D. Ill. 1993).................... 21

*Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010).. 24

*Woods v. Club Cabaret, Inc.*,
No. 1:15-cv-01213-JEH, 2017 WL 4054523 (C.D. Ill. May 17, 2017) ....................................... 16

**Statutes & Rules**

FED. R. CIV. P. 23(h) ................................................................................................................ 21

**Other Authorities**

Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. EMPIR. L. STUD. 248 (2010)............................................................ 15

## I. INTRODUCTION

After almost three years of an extensive pre-suit investigation and litigation in this complex antitrust matter without any guarantee of compensation, Plaintiff Northbrook Park District ("Plaintiff") and Interim Co-Lead Counsel ("Class Counsel") have succeeded in securing a class-wide resolution of this action for $1,730,000 million cash (the "Settlement Fund"). The Parties'[1] Settlement, which was the reached after numerous months of discovery and settlement negotiations, provides substantial monetary relief to all Settlement Class Members. The Settlement reflects the skill, expertise and hard work of Class Counsel in providing zealous representation and diligent prosecution of this action on behalf of direct purchasers of Commercial Flooring Products and Other Associated Services.

For their efforts in achieving a substantial recovery for Settlement Class Members, Plaintiff respectfully asks the Court to approve an award of attorneys' fees to Class Counsel for one-third (33.33%) of the Settlement Fund, *after* litigation expenses of approximately $20,502.68 and a class representative service award of $25,000 are first deducted. When taking into account the deductions out of the common fund before calculating attorneys' fees, Class Counsel's fee request is equivalent to 32.5% of the Settlement Fund.[2] In light of the work performed, the risks involved and the exceptional recovery achieved, Plaintiff and Class Counsel reasonably believe that the requested fee award is fair and reasonable.

---

[1] Unless otherwise stated herein, capitalized terms shall have the same meaning as provided in the Parties' Settlement Agreement, which was attached as Exhibit 1 to Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Proposed Settlement (Dkt. No. 77-1).

[2] Class Counsel seeks one-third (33.33%) of the remaining $1,684,497.32 in the Settlement Fund after litigation costs and a class representative service award are deducted, producing a fee request of $561,442.95 ($1,684,497.32 * 33.33% = $561,442.95). Thus, Class Counsel's fee request is equivalent to approximately 32.5% of the total $1,730,000 Settlement Fund ($561,442.95 / $1,730,000 = 32.45%).

Class Counsel's fee request is appropriate and within the range accepted by this Court. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) ("common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the reasonable range"). A 32.5% fee request is warranted in light of the substantial risks Class Counsel undertook in litigating this antitrust class action against numerous Defendants who were represented by highly-skilled attorneys from top defense firms. Prosecuting this matter has already required over $700,000 of attorney time, all of which was advanced by Class Counsel on a fully contingent basis without any guarantee of recovery. Had the case resulted in no recovery for the Class, Class Counsel would receive no compensation for their time or out-of-pocket expenses. Having incurred these substantial risks, and having secured a significant Settlement Fund for the benefit of the Settlement Class, Class Counsel truly earned the requested fee award. Additionally, the reasonableness of Class Counsel's fee request is further bolstered by a lodestar cross-check analysis, which demonstrates that the requested fee amounts to a negative multiplier on the combined lodestar of Class Counsel.

## II. CLASS COUNSEL DEDICATED CONSIDERABLE RESOURCES TO THIS MATTER AND FACED SUBSTANTIAL RISKS TO SUCCESSFULLY RESOLVE THIS CASE

From the inception of their investigation into this matter, Class Counsel dedicated significant time, effort and resources in prosecuting this litigation and ensuring that the Class would recover from Defendants' wrongful conduct. A summary of those efforts is provided below.

### A. Class Counsel Conducted an Extensive Pre-Suit Investigation

In early 2019, Class Counsel began conducting an extensive investigation of bid-rigging and price-fixing in the commercial flooring products and services industry. Joint Declaration of Class Counsel ("Class Counsel Decl."), Ex. 1 at ¶3. Class Counsel conducted a market analysis of

the commercial flooring industry, spoke with numerous professionals in the commercial flooring marketplace and examined the various types of flooring products and services that are at issue in this matter. *Id*. Through these investigative efforts, Class Counsel was able to learn and understand important factual and legal issues such as how commercial flooring jobs are sent out for bids, the terms and conditions generally applicable to responses to requests for quotation from commercial flooring providers, and how pricing was determined and negotiated.

While the United States Department of Justice Antitrust Division ("DOJ") conducted a related criminal investigation, Class Counsel had to independently obtain evidence of the financial impact to victims and identify all of the commercial flooring providers who participated in the antitrust conspiracy. Unlike traditional direct purchaser antitrust cases in which any person or entity who directly purchased a product or service from a defendant has standing to bring claims, this case was centered around bid-rigging. The bid-rigging component of Defendants' price-fixing conspiracy presented several challenges for Class Counsel, including: (i) identifying all of the potential defendants and co-conspirators who submitted noncompetitive, complementary bids in furtherance of the conspiracy, (ii) analyzing the types of victims who would seek and obtain multiple bids from commercial flooring providers in preparation of purchasing commercial flooring products and services; and (iii) assessing the direct impact of Defendants' bid-rigging conspiracy on prices of commercial flooring products and services sold to the public.

**B. Plaintiff's Class Action Complaints and Discovery**

After investigating the case for over a year and a half, on December 18, 2020 Plaintiff filed a detailed antitrust class action complaint in this Court against the Initial Defendants (Dkt. No. 2). On December 29, 2020, this Court entered a minute entry setting an initial status conference for February 4, 2021 and required the Parties to submit a joint initial status report (Dkt. No. 8).

Following the filing of Plaintiff's action, Plaintiff's counsel contacted Defendants' counsel to discuss executing Rule 4 waivers of service of the complaint and other matters set forth in this Court's Standing Order Regarding Initial Status Reports. During those discussions, the Parties agreed to exchange information related to the merits of their respective claims and defenses. Class Counsel Decl., Ex. 1 at ¶7.

The Parties submitted their joint initial status report on February 1, 2021 in accordance with the Court's Standing Order Regarding Initial Status Reports and the Court's December 29, 2020 minute entry. The status report informed the Court that all Defendants had executed Rule 4 waivers of service and that the Parties were negotiating a proposed case management schedule with case deadlines (Dkt. No. 28). During numerous discussions, the Parties diligently worked together to identify and address the primary issues in this action, including but not limited to antitrust liability, successor liability, class certification and damages. Class Counsel Decl., Ex. 1 at ¶9. On February 18, 2021, the Parties submitted a proposed initial case management order requesting an abeyance of all case deadlines while the Parties discussed the types of informal discovery that were needed to explore a potential class-wide resolution of this litigation. The next day, the Court entered the Parties' Initial Case Management Order and set a status conference on the progress of settlement discussions (Dkt. No. 36).

Class Counsel prepared informal document requests and served them on Defendants' counsel in order to assess the scope of Defendants' price-fixing conspiracy and the associated damages to the Class. Class Counsel Decl., Ex. 1 at ¶10. Pursuant to Rule 408, Defendants produced numerous documents, including detailed transactional data regarding commercial flooring projects that were potentially impacted by the alleged antitrust conspiracy. *Id*. Class Counsel analyzed the information learned through informal discovery and calculated that the

volume of commerce impacted by Defendants' price-fixing conspiracy during the applicable class period was approximately $9.35 million. *Id*. at ¶11. As in many antitrust cases, the volume of impacted commerce was hotly contested by the Parties and remains in dispute. *Id*.

Significantly, Class Counsel discovered through its ongoing investigation that an additional commercial flooring provider should be added as a named defendant. *Id*. at ¶19. Although Defendant Commercial Carpet Consultants, Inc. has not been criminally charged by the DOJ nor named in any public criminal information, through informal discovery Class Counsel obtained sufficient evidence of Commercial Carpet Consultants's participation in the unlawful antitrust conspiracy at issue in this case. *Id*. Accordingly, on June 17, 2021, Plaintiff filed a motion for leave to amend its complaint (Dkt. No. 53), which was subsequently granted by the Court during the Parties' June 21, 2021 status hearing (Dkt. No. 56). On June 25, 2021, Plaintiff filed its First Amended Class Action Complaint adding Commercial Carpet Consultants as a Defendant (Dkt. No. 57). Since that time, Class Counsel worked with counsel for Commercial Carpet Consultants to gather the same types of documents and information that were produced by other Defendants. Class Counsel Decl., Ex. 1 at ¶20. Naming Commercial Carpet Consultants as a Defendant in this action not only provided additional information from another member of the price-fixing conspiracy, it also brought another commercial flooring provider to the table with monetary resources to contribute to a potential class-wide settlement.

Based on the preliminary documents and information produced by Defendants, the Parties agreed to temporarily forgo briefing a motion to dismiss Plaintiff's First Amended Class Action Complaint and continue their settlement progress with an expanded scope of discovery. *Id*. at ¶13. Although there is no threshold volume of discovery required to justify a class action settlement, this Court has noted that "the label of 'discovery' [either formal or informal] is not what matters.

Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (citation omitted). From early 2021 and continuing until the Parties executed the final version of the Settlement in January 2022, the Parties conducted informal discovery relating to the merits of Plaintiff's claims, Defendants' defenses and the impact to the Settlement Class. Class Counsel Decl., Ex. 1 at ¶14. Through informal discovery, Class Counsel obtained over 11,000 pages of documents relating to Defendants' commercial flooring business practices in addition to relevant transaction data. *Id*. at ¶15. These materials provided Class Counsel with significant evidence to perform a comprehensive analysis of Plaintiff's claims and Defendants' defenses. Consequently, Class Counsel was adequately able to make an informed decision regarding a fair and reasonable resolution on behalf of Settlement Class Members.

**C. Class Counsel Successfully Located a Cooperating Witness**

In order to develop a detailed understanding of how Defendants' price-fixing conspiracy operated as well as address the scope of financial harm, Class Counsel identified a former senior-level executive at one of the Defendant's commercial flooring companies as a potential cooperating witness. *Id*. at ¶16. The cooperating witness had years of experience in the commercial flooring industry in addition to an in-depth understanding of Defendants' business operations. *Id*.

Class Counsel successfully negotiated with the witness's counsel to reach a cooperation agreement. *Id*. at ¶17. One of the primary benefits of that agreement allowed Class Counsel to conduct interviews of the cooperating witness and procure various types of confidential information that could only be obtained from a direct participant in the conspiracy. *Id*. Through these efforts, Class Counsel was able to develop direct evidence of the scope and impact of Defendants' antitrust conspiracy by accessing the witness's vast knowledge of the commercial flooring market, pricing of commercial flooring products and services and invaluable internal

information regarding Defendants' unlawful conspiracy. *Id*. at ¶18. Further, the cooperating witness agreed to continue to cooperate with Class Counsel as the case moved forward in litigation. *Id*.

**D. Settlement Negotiations**

The proposed Settlement reached in this action was the product of months of arm's-length, good faith settlement negotiations made possible by voluminous informal discovery. *Id*. at ¶21. Given the complex nature of the claims asserted, the Parties dedicated a significant period of time to exchange documents and information in furtherance of settlement. *Id*. at ¶12. First, Class Counsel had to determine the impacted volume of commerce to use as a starting point and analyze information from various sources to evaluate damages—the difference between the supracompetitive prices paid by Settlement Class Members for Commercial Flooring Products and Other Associated Services and the price they would have paid in a competitive market. Then, Class Counsel was able to begin settlement negotiations. During settlement discussions, the Parties participated in frequent telephone calls and communications via email regarding the proper class definition and the appropriate contours of a settlement on behalf of victims of Defendants' price-fixing conspiracy. *Id*. at ¶22.

One of the primary reasons why the Parties were able to effectively negotiate a class settlement in this action without motion practice is that both sides were represented by skilled and experienced counsel. Class Counsel has extensive experience in class action litigation, having successfully litigated and negotiated many class settlements. *Id*. at ¶27, The Bruno Firm Resume & Freed Kanner London & Millen Resume. Further, the professional standing and expertise of opposing counsel is an important factor in evaluating the quality of services rendered by Class Counsel. *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2021 WL 5709250, at *3 (N.D. Ill.

Dec. 1, 2021). In this case, three of the Settling Defendants were represented by Dechert LLP, Katten Muchin Rosenman LLP, and Perkins Coie LLP, leading global law firms with substantial legal resources at their disposal. Counsels' litigation experience allowed them to address the myriad of factual and legal issues presented in this matter with the collective goal of reaching a potential class-wide resolution. After many months of arms'-length negotiations, and despite significant legal challenges, Class Counsel achieved a $1.73 million cash settlement, which will provide substantial benefits to each member of the Settlement Class.

## III. THE REQUESTED FEE AWARD IS REASONABLE AND APPROPRIATE

### A. The Requested Fee Award is Fair and Reasonable as a Percentage of the Settlement Fund.

When a party obtains compensation for the class's benefit in the form of a common fund, courts have long recognized that the costs of the litigation, including an award of attorneys' fees, should be recovered from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This approach equitably apportions the costs of litigation, including attorneys' fees, among the class members who benefit from the common fund. *Id*.

Courts in the Seventh Circuit have adopted a market-based approach in evaluating class action fee requests. *Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 246-47 (7th Cir. 2014). When assessing the reasonableness of an attorney fee award in a common fund class action settlement, courts should "do their best to award counsel the market price for legal services, in light of the risk of non-payment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig. ("Synthroid I")*, 264 F.3d 712, 718 (7th Cir. 2001).

There are two predominant approaches commonly used in awarding class action attorneys' fees: (i) the "percentage of the recovery" method, under which a court awards a percentage of the

total common settlement fund; and (ii) the "lodestar" method, under which the fee is the product the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844, 849 (N.D. Ill. 2015). The Seventh Circuit has strongly endorsed the percentage-of-the-fund methodology when awarding attorneys' fees because it closely approximates the manner in which attorneys are compensated in the marketplace for contingent work. *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (collecting cases). The percentage-of-the-fund method utilizes an *ex ante* approach, in which courts award a fee approximating a hypothetical bargain between the class and its attorneys before the actual results of the litigation could be known. *Americana Art*, 743 at 246-47.

In this Circuit, courts consider the following factors when determining a reasonable *ex ante* market rate for legal services in an antitrust class action litigation such as this case: (i) attorneys' fees awards in other class action settlements; (ii) the risk of nonpayment counsel agreed to bear at the outset of the case; (iii) the stakes of the case; (iv) the amount and quality of work necessary to resolve the litigation; and (v) any fee agreements between plaintiffs and their counsel. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *see also Synthroid I*, 264 F.3d at 719. Balancing these and any case-specific factors is a matter committed to the sound discretion of the trial court. *Americana Art*, 743 F.3d at 246. These factors weigh heavily in favor of the Court granting Class Counsel's fee request.

### 1. The Requested Fee is Consistent with the Market Rate Approved by Courts in Similar Cases.

The requested fee award of 32.5% of the Settlement Fund is consistent with and below the market rate frequently approved by courts in similar class cases, both inside and outside the Seventh Circuit. When assessing the reasonableness of a fee request, a relevant data point for the market price for attorneys' fees is those awarded in "analogous class action settlements." *Hale v.*

*State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018); *Taubenfeld*, 415 F.3d at 600. In antitrust class action litigation, courts have recognized that "the 'market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time' is a contingent fee in the amount of one-third (1/3) of the common fund recovered." *In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (quoting *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2002)).

Courts within the Seventh Circuit routinely award contingency fees of one-third of the common fund in class cases. *See, e.g., In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *4 (acknowledging that "fee awards in antitrust cases in this circuit are almost always one-third [was] a strong indication that this should be considered the 'market rate'" and awarding fees of one-third of settlement fund after deducting expenses and incentive awards); *In re Dairy Farmers*, 80 F. Supp. 3d at 862 (awarding one-third of the common fund); *In re Lithotripsy Antitrust Litig.*, No. 1:98-cv-08394, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) (holding "33.3% of the fund plus expenses is well within the generally accepted range of the attorneys' fee awards"). Similarly, courts outside this Circuit have also found a fee request of one-third of the settlement common fund to be appropriate and reasonable in antitrust class action cases. *See, e.g., In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328, 2015 WL 4875464, at *13 (E.D. La. 2015) (finding one-third fee of $6 million common fund was "roughly in line with other percentage awards that courts in [the Fifth Circuit] have approved"); *In re Southeastern Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155387, at *8 (E.D. Tenn. May 13, 2013) (awarding one-third fee from settlement fund); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748-52 (E.D. Pa. 2013)

(noting that in recent years "courts in eight direct purchaser antitrust actions approved one-third fees" and awarding one-third fee from common fund).

Class Counsel's fee request seeks 32.5% of the common fund created by the Parties' Settlement. All of the authority cited above confirms that Class Counsel's fee request is within the range of reasonableness for market rates for legal services in comparable antitrust cases and other class action litigation in the Seventh Circuit, this District and other courts around the country.

**2. Class Counsel Devoted Substantial Resources to This Case and Achieved an Exceptional Outcome.**

Courts should consider the amount of work necessary to resolve the litigation and the caliber of class counsel's performance to determine an appropriate market rate for legal fees. *Synthroid I*, 264 F.3d at 721. Here, Class Counsel dedicated considerable time and resources to the investigation, research and prosecution of this case. To start, Class Counsel spent over a year and half investigating this matter, including conducting a market analysis of the commercial flooring industry, identifying the commercial flooring providers that participated in the unlawful conspiracy, meeting with direct purchasers to evaluate the prices of Defendants' bids on various commercial flooring projects during the relevant time period, and preparing a detailed 39-page antitrust class action complaint (Dkt. No. 2). Class Counsel Decl., Ex. 1 at ¶3. After the case was underway, Class Counsel served numerous informal discovery requests on Defendants and reviewed thousands of pages of documents and information over the course of many months in order to better understand the nature and financial impact of the conspiracy. *Id*. at ¶¶10, 15.

The volume of impacted commerce at issue in this matter was hotly contested and remains in dispute. *Id*. at ¶11. Class Counsel expended time and effort to arrive at an intelligent calculation of the volume of impacted commerce before beginning settlement negotiations. *Id*. After many months of informal discovery and arms'-length, good faith settlement discussions, the Parties

agreed to a class settlement in principle with a requirement that Defendants produce additional records and information. *Id*. at ¶25. To date, through informal discovery Defendants have produced documents totaling over 11,000 pages in addition to relevant transactional data. *Id*. at ¶15. Class Counsel also diligently worked with Defendants to resolve any other differences, exchanged numerous drafts of a settlement agreement and prepared class settlement notices. *Id*. at ¶26. After finalizing the Settlement materials, Class Counsel drafted a motion and supporting memorandum in favor of preliminary approval of the Parties' Settlement (Dkt. Nos. 76-77), which was subsequently granted by this Court during the Parties' preliminary approval hearing (Dkt. No. 80).

Notably, Class Counsel's tireless efforts have led to an exceptional result for the Settlement Class. The Settlement Fund of $1.73 million will be used to directly compensate all Settlement Class Members and resolve claims arising from a volume of commerce of $9.35 million in sales of Commercial Flooring Products and Other Associated Services that were impacted by Defendants' anticompetitive conspiracy. Thus, the Settlement Fund to impacted sales ratio provided by the Settlement represents an extraordinary recovery of approximately 18.5%[3], which far exceeds recoveries obtained in a large majority of class action settlements. *See Schulte*, 805 F. Supp. 2d at 583 (acknowledging that numerous courts have approved settlements with recoveries at 10% or below the maximum potential recovery); *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-cv-1014, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (citing study determining that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses") (internal citations omitted).

Class Counsel is proud of their hard work and strongly believe that the Settlement is in the best interests of Settlement Class Members. Class Counsel Decl., Ex. 1 at ¶36. The Settlement is

[3] $1.73 million (Settlement Fund) / $9.35 million (Impacted Volume of Commerce) = 18.5%.

also a favorable result because it effectively eliminates the risk of an adverse outcome or delay by providing immediate and substantial benefits for the Settlement Class despite significant legal challenges and defenses. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 961 (N.D. Ill. 2011).

Finally, this action is the only civil antitrust proceeding in the country that seeks to recover from Defendants for participating in an unlawful conspiracy to rig bids and fix the prices of Commercial Flooring Products and Other Associated Services. Class Counsel Decl., Ex. 1 at ¶5. But for Class Counsel's agreement to take on this fight, there would no recovery at all for the Class. The bottom line is that the Settlement will provide real money to public and private entities, including Plaintiff which primarily operates to serve the local community.

Although Class Counsel has already expended 923 hours and over $700,000 in time to prosecute the claims on behalf of the Class—all of which was advanced on a fully contingent basis with no guarantee of recovery—they understand that their work and commitment to the Class is far from complete. *Id*. at ¶46. Class Counsel will continue to work with the Settlement Administrator to ensure notice is properly conducted and respond to inquiries from Settlement Class Members in connection with submitting claim forms. *Id*. at ¶47. Further, pursuant to this Court's Preliminary Approval Order, Class Counsel will file a motion for final approval of the Parties' Settlement in addition to preparing for and attending the Fairness Hearing (Dkt No. 80 at 7-8). *Id*. at ¶48. If final approval is granted, Class Counsel will also be directly involved in overseeing the process of distributing each class member's share of the Settlement. *Id*.

The Settlement is the successful culmination of Class Counsel's diligent factual and legal investigation, thorough discovery efforts and extensive settlement negotiations. The amount and quality of Class Counsel's work weighs heavily in favor of granting the requested fee.

### 3. Class Counsel Faced Substantial Risk of Nonpayment and the Stakes of This Litigation Were High.

Class Counsel shouldered an extraordinary risk when they decided to represent Plaintiff and the Class. When determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk that class counsel assumed in undertaking the lawsuit. *In re Dairy Farmers*, 80 F. Supp. 3d at 847-48. The Seventh Circuit has instructed that fee awards should be evaluated "in light of the risk of nonpayment," *Synthroid I*, 264 F.3d at 718, and that "a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011); *see also Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) ("a court must assess the riskiness of the litigation by measuring the probability of success of this type of *at the outset* of the litigation") (emphasis in original).

Class Counsel faced substantial risk of nonpayment and the stakes of this antitrust litigation were significant. First, antitrust class litigation is inherently risky and presents complex legal issues. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 721680, at *17 (N.D. Cal. Jan. 28, 2016). This case is no exception. Plaintiff, on behalf of itself and a class of direct purchasers, alleged Defendants engaged in antitrust conspiracy to rig bids and to fix, raise, maintain and stabilize the prices of Commercial Flooring Products and Other Associated Services, and further alleged that the Class materially overpaid as a result of the conspiracy. *See* Dkt. No. 57 (Plaintiff's First Amended Class Action Complaint). If this case had been litigated through summary judgment, class certification and at trial, there is no question that the issues presented would be complex, extremely costly to prosecute and the outcome would be anything but certain. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007).

Further, courts often rely on academic reports to determine the market price for class action contingent fees. *In re Cabletron Sys., Inc. Secs. Litig.*, 239 F.R.D. 30, 41-42 (D.N.H. 2006) (relying

on "comprehensive studies evaluating fee awards in class action cases" and collecting those studies). In a study analyzing class actions against insurers, only 12% of 564 attempted class actions led to a settlement. Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. EMPIR. L. STUD. 248, 280 (2010) (citation omitted). Despite these considerable risks and the strong possibility of no recovery at all, Class Counsel vigorously represented direct purchasers of Commercial Flooring Products and Other Associates Services and obtained a substantial recovery on behalf of the Settlement Class.

Second, although the DOJ had criminally charged certain Defendants at the time this action was brought, there were still significant risks of no recovery at all. Specifically, Class Counsel bore the risks of: (i) motions to dismiss by participants of the alleged antitrust conspiracy and their successors; (ii) potential discovery limitations and delays; (iii) numerous defense arguments and potential *Daubert* challenges at class certification; (iv) a possible Rule 23(f) review and attendant delay upon class certification; (v) all other risks of litigation on the merits, including summary judgment, new or renewed *Daubert* motions, other evidentiary challenges, trial risks on liability and damages, post-trial motions, appeals, and more.

While Class Counsel believe that their case is strong, Defendants deny they are liable to Plaintiff or the Settlement Class. Class Counsel Decl., Ex. 1 at ¶30. Several of the Defendants are represented by top and prominent defense firms, including Dechert LLP, Katten Muchin Rosenman LLP and Perkins Coie LLP, all of which rank among the Vault Law 100 for most prestigious firms.[4] If necessary, defense counsel was prepared to litigate this matter to the end. Class Counsel Decl., Ex. 1 at ¶28. The prominence and sophistication of defense counsel magnifies the risk of nonpayment taken on by Class Counsel. *In re Broiler Chicken Antitrust Litig.*, 2021

[4] *Vault Law 100*, FIRSTHAND, https://firsthand.co/best-companies-to-work-for/law/top-100-law-firms-rankings (last visited Apr. 8, 2022).

WL 5709250, at *3. That Class Counsel obtained the Settlement despite formidable legal opposition further confirms the superior quality of their legal representation.

Defendants' counsel asserted several factual and legal defenses that, if successful, would defeat or substantially impair the value of the Settlement Class Members' claims, such as whether Plaintiff can certify a class of similarly-situated purchasers of Commercial Flooring Products and Other Associated Services. Class Counsel Decl., Ex. 1 at ¶29. Critically, among other defenses, Defendants claim that there are no damages arising from the alleged anticompetitive conduct. *Id.* at ¶30. Indeed, this Court has expressly acknowledged the significant risks of pursuing antitrust class action litigation: "the 'best' case can be lost and the 'worst' case can be won, and juries may find liability but not damages. None of these risks should be underestimated." *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990). Even if Plaintiff was able to establish liability and damages and obtain a judgment on behalf of a certified class, judgment might be vacated or reversed on appeal. Class Counsel Decl., Ex. 1 at ¶30. Although Plaintiff and Class Counsel are confident in the strength of the claims asserted, they also recognize that securing class certification and a victory on the merits presents significant legal challenges with a high degree of uncertainty. *See In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *10 (E.D. Pa. June 2, 2004) (acknowledging that "an antitrust action is arguably the most complex action to prosecute" because "the legal and factual issues are always numerous and uncertain in outcome") (citation omitted).

Third, when assessing the risks of protracted class action litigation, courts consider a defendant's solvency and ability to pay a judgment. *Woods v. Club Cabaret, Inc.*, No. 1:15-cv-01213-JEH, 2017 WL 4054523, at *6 (C.D. Ill. May 17, 2017). During the course of their lengthy case investigation, Class Counsel discovered that certain Defendant commercial flooring providers

were no longer doing business in the commercial flooring marketplace. Class Counsel Decl., Ex. 1 at ¶31. Through extensive research and investigative efforts, Class Counsel learned that: (i) Defendant Mr. David's Flooring International, LLC had entered into an asset purchase agreement with Diverzify+ LLC whereby Diverzify+ acquired and took over Mr. David's Flooring's business operations (Dkt. No. 2 at ¶¶17, 20); and (ii) Defendant Vortex Commercial Flooring, Inc. entered into asset purchase agreement with Consolidated Carpet Associates, LLC whereby Consolidated Carpet Associates created a new Illinois-based entity staffed with Vortex Commercial Flooring's former executives to run commercial flooring business operations (*id*. at ¶¶41-43). These factual developments raised significant concerns regarding these Defendants' financial solvency.

Additionally, Defendants' recent asset purchase agreements raised the novel legal question of whether a successor who acquired the assets of its predecessor can be held liable for antitrust claims that accrued prior to the execution of an asset purchase agreement. Plaintiff's complaints do not allege that Defendants' successors engaged in any anticompetitive conduct or otherwise violated federal antitrust laws. Generally, a purchaser of assets of a corporation does not acquire the seller's liabilities, even if all the assets are transferred by the sale so that in effect the entire business has been sold, and the purchaser intends to continue it as a going concern. *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1424-26 (7th Cir. 1993). However, under the federal common law successor liability doctrine, when a claim arising from a violation of federal rights is involved, courts permit a plaintiff to sue the purchaser of the violator's business even if it is a true sale, so long as certain conditions are met. *E.E.O.C. v. G-K-G, Inc.*, 39 F.3d 740, 748-49 (7th Cir. 1994). Importantly, Class Counsel are not aware of any antitrust cases in this Circuit where a party successfully asserted the federal common law successor liability doctrine. Class Counsel Decl.,

Ex. 1 at ¶34. If Class Counsel were not able to keep Defendants' successors in this action, Class Counsel reasonably believe that there would be a serious question as to whether the remaining Defendants would be able to satisfy a trebled antitrust class action judgment. *Id*. Nevertheless, based on their comprehensive legal research and factual investigation, Class Counsel strongly believed that Defendants Diverzify+ and Consolidated Carpet Associates would be held liable for their predecessors' unlawful conduct, and importantly, those Defendants have agreed to financially contribute to the parties' Settlement.

Finally, the fact that this case is the only antitrust class action proceeding in the country that sought a monetary recovery for victims of Defendants' price-fixing conspiracy underscores the substantial risk of nonpayment. If the DOJ's criminal investigation made getting a class settlement easy, presumably numerous antitrust law firms would have filed related cases. ***But Class Counsel are the only law firms who agreed to undertake this risky and uncertain venture***. Courts in the Seventh Circuit have recognized that counsel's decision to pursue class action litigation when no other law firms did so is strong evidence of the risk of non-payment and provides support for a request for reasonable fees. *See Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("When this suit got under way, no other law firm was willing to serve as lead counsel. Lack of competition not only implies a higher fee but also suggests that most members of the [ ] bar saw this litigation as too risky for their practices.").

#### 4. Class Counsel's Agreement with Plaintiff Provided that Fees Would Be Paid on a Contingency Basis.

Another factor courts consider when determining a reasonable market rate for legal services is the fee agreed to between class counsel and the class representatives. *Hale*, 2018 WL 6606079, at *8 (citing *Synthroid I*, 264 F.3d at 719). While Class Counsel's retention agreement with Plaintiff states that "the Client hereby agrees to pay a contingent fee to be fixed and/or

approved by the court in which the action is pending out of any monies or property recovered on behalf of the Client and on behalf of all other persons similarly situated," it does not specify a certain percentage fee. Class Counsel Decl., Ex. 1 at ¶54.

Nonetheless, the Court-approved notices of settlement that were disseminated to class members—several of which who are sophisticated entities and others who are represented by counsel[5]—informed them that Class Counsel would ask the Court to approve a reasonable fee award not to exceed 33.33% of the Settlement Fund. Dkt. No. 77-1 at 81.[6] As of the date of this filing, Class Counsel have not received any objections to their fee request. Class Counsel Decl., Ex. 1 at ¶55. This Court has found that the lack of opposition to a fee request by sophisticated entities constitutes evidence that the requested fee award is reasonable. *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *2; *see also Silverman*, 739 F.3d at 959 (holding that for large, sophisticated investors, it would be "worth a complaint to the district judge if the lawyers' cut seems too high. Yet none of the institutional investors has protested[.]").

Thus, although there is no presumption of a market-rate reasonableness given that Class Counsel's contingent fee agreement with Plaintiff does not specify a percentage fee[7], the lack of opposition to the requested fee award indicates that the requested 32.5% fee is fair and reasonable.

**B. A Lodestar Cross-Check Confirms that the Fee Requested is Reasonable.**

While the percentage-of-the-fund method is favored in the Seventh Circuit for determining attorneys' fees in common fund cases, courts may also use a lodestar cross-check to evaluate class counsel's time and effort when evaluating the reasonableness of a fee. *In re Dairy Farmers*, 80 F.

---

[5] Class Counsel Decl., Ex. 1 at ¶49.

[6] Further, Plaintiff's motion and supporting memorandum for approval of attorneys' fees, reimbursement of expenses and a class representative service award will be posted on the case settlement website, www.commercialflooringantitrustsettlement.com. Accordingly, all class members will have notice and an opportunity to be heard at the Fairness Hearing.

[7] *In re Dairy Farmers*, 80 F. Supp. 3d at 845.

Supp. 3d at 844. However, a lodestar cross-check is not required and the Seventh Circuit has "never ordered [a] district judge to ensure that the lodestar result mimics that of the percentage approach." *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998).

The lodestar is derived by multiplying the hourly rate of the attorneys by the number of hours reasonably expended. *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2019). A reasonable hourly rate is one that is consistent with the common rate in the "community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Jeffboat, LLC v. Dir. Office of Workers' Comp. Programs*, 553 F.3d 487, 489 (7th Cir. 2009). Here, each Class Counsel firm has represented that the hourly rates applied to this matter were the usual and customary rates their firms historically charged in similar cases. Class Counsel Decl., Ex. 1 at ¶45. Further, class counsel's base lodestar is often adjusted upward by a multiplier that reflects a variety of factors such as the complexity of the litigation and the degree of success achieved. *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 954 (7th Cir. 2019) (citation omitted).

In this case, a lodestar cross-check clearly demonstrates that the requested fee award falls well within the range of reasonableness. Based on historic hourly rates, Class Counsel's total combined lodestar from inception through March 31, 2022 is $702,860. *See* Class Counsel Decl., Ex. 1 at ¶40. Thus, awarding Class Counsel a 32.5% fee from the $1.73 million common fund ($561,442.95) would result in a negative multiplier of 0.799[8], which is below the range of fees commonly awarded in similar antitrust class litigation. As the Seventh Circuit has recognized that lodestar multipliers between 1 and 4 may be appropriate depending on the case-specific facts[9], Class Counsel's requested fee is reasonable and appropriate.

[8] $561,442.95 (requested fee award) / $702,860 (Class Counsel's base lodestar) = 0.799.

[9] *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991); *see also Cook*, 142 F.3d at 1015 (upholding district court's decision to enhance lodestar by multiplier of 1.5); *Schulte*, 805 F. Supp. 2d at 598 (approving

## IV. CLASS COUNSEL'S LITIGATION EXPENSES WERE REASONABLY INCURRED AND REIMBURSEMENT SHOULD BE APPROVED

Pursuant to Federal Rule of Civil Procedure 23, a court may award reasonable expenses authorized by the parties' agreement. FED. R. CIV. P. 23(h). Further, under the common fund doctrine, class counsel customarily are entitled to reimbursement of reasonable expenses incurred in the litigation. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970). Reimbursable expenses are those "that are consistent with market rates and practices." *In re Ready-Mixed* Concrete, 2010 WL 3281591, at *3.

Class Counsel had a strong incentive to keep expenses at a reasonable level because they agreed to litigate this matter on a contingent basis with a significant risk of no recovery. Class Counsel's litigation expenses are attributable to ordinary and necessary costs, such as filing fees ($402), service of process costs ($170), class administration (estimated at $15,000[10]), publication notice ($4,422.62) and a settlement website ($508.06). Class Counsel Decl., Ex. 1 at ¶49. These expenses are typically billed by attorneys to paying clients and were reasonably incurred in the prosecution of this litigation and administration of the Parties' Settlement. *Id*. at ¶50. Class Counsel's retention agreement with Plaintiff expressly states that "contingent on the outcome, [counsel] may seek reimbursement of litigation expenses from the court." *Id*. at ¶51. Accordingly, Class Counsel's request for reimbursement of litigation expenses in the amount of $20,502.68 is reasonable and should be approved. *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1256-58 (N.D. Ill. 1993) (finding costs of filing complaint, service of process and class notice to be reasonable and appropriate in class litigation).

award that represented multiplier of less than 2.5, which court found was "not an unreasonable risk multiplier").

[10] As the claims process is ongoing, the Settlement Administrator's costs are not yet finalized at this time. Class Counsel will update the Court at the Fairness Hearing regarding the actual costs of class notice and administration. Class Counsel Decl., Ex. 1 at ¶49 n.4.

## V. THE SOLE CLASS REPRESENTATIVE SHOULD RECEIVE THE REQUESTED SERVICE AWARD FOR ITS CONSIDERABLE TIME AND EFFORT

Class Counsel respectfully requests that the Court approve a class representative service award of $25,000 to Plaintiff for the considerable time and effort it invested in this case. Federal courts in this Circuit routinely grant service awards to class representatives in recognition of the time and effort they dedicated in the case as well as the risks incurred by leading the litigation. *Cook*, 142 F.3d at 1016. The Seventh Circuit has recognized that "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive [or service] award is appropriate if it is necessary to induce an individual to participate in the suit." *Id*. Courts consider various factors when determining an appropriate class representative service award, including: (i) the actions the class representative has taken to protect the interests of the class; (ii) the degree to which the class has benefitted from those actions; and (iii) the amount of time and effort the class representative expended in pursing the litigation. *Id*. As set forth below, Plaintiff is well deserving of the requested service award.

The requested service award is reasonable and justified in light of Plaintiff's significant contributions and diligent work on behalf of the Settlement Class. First, Plaintiff took critical actions to protect the interests of potential class members. Since mid-2020, Plaintiff—acting through its 7-member, volunteer Board of Commissioners and an Executive Director[11]—participated in an extensive pre-suit investigation, provided documents and information that were crucial to establishing Plaintiff's and the Class's claims as well as initiated suit against Defendants. Class Counsel Decl., Ex. 1 at ¶¶60-61. ***Plaintiff's lawsuit is the first and only antitrust class action brought by a victim of Defendants' unlawful price-fixing conspiracy***. *Id*. at ¶58.

[11] *Board of Commissioners and Board Meetings*, NORTHBROOK PARK DISTRICT, https://www.nbparks.org/about/board-of-commissioners-and-board-meetings/ (last visited Apr. 8, 2022).

Additionally, at Class Counsel's request, Plaintiff also made available its outside corporate counsel who were involved in handling commercial flooring transactions with Defendants. Plaintiff's corporate counsel, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd. ("Robbins Schwartz") is a well-known law firm that has extensive experience in local government, municipal, and park district law. Attorneys at Robbins Schwartz were able to provide Class Counsel with detailed factual information regarding how commercial flooring projects were sent out for bids and how bids were then reviewed and relied upon when determining commercial flooring project pricing. *Id*. at ¶62. The benefits of Class Counsel's collaboration with Plaintiff and Robbins Schwartz cannot be understated: both Plaintiff and Robbins Schwartz were instrumental in Class Counsel's development of first-hand knowledge and evidence of Defendants' bid-rigging and price-fixing conspiracy. *Id*. at ¶63.

Since the inception of this case, Plaintiff has spent a significant amount of time helping Class Counsel prosecute and negotiate this matter to a successful resolution. Among other things, Plaintiff has: (i) gathered and provided various types of documents and information, including but not limited to all of its bids and purchase records relating to Defendants during the relevant time period; (ii) held a Board meeting to discuss the risks of pursuing a lawsuit against Defendants; (iii) reviewed both the initial complaint (Dkt. No. 2) and First Amended Class Action Complaint (Dkt. No. 57) in preparation of filing; (iv) had numerous telephone calls and meetings with its corporate counsel regarding important case-related factual and legal issues at Class Counsel's request; (v) met with Class Counsel on two different occasions to stay abreast of the case and for settlement purposes; and (vi) reviewed the Parties' Settlement Agreement and held a Board meeting for Settlement approval. Class Counsel Decl., Ex. 1 at ¶61. In total, Plaintiff has devoted over 50 hours to this action, which provided great benefits to members of the Settlement Class. *Id*.

Notably, courts in the Seventh Circuit have found named plaintiff service awards of $25,000 to be reasonable and appropriate. *See, e.g.*, *Cook*, 142 F.3d at 1016 (affirming $25,000 service award); *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 WL 4818174, at *4 (S.D. Ill. Nov. 22, 2010) (granting $25,000 case contribution award and noting that "[a]wards of $25,000 for each Plaintiff are well within the range that are typically awarded in comparable cases"). Recently, a federal district court approved an interim service award of $50,000 to seven class representatives in an antitrust class case where the named plaintiffs had produced documents but had not been deposed. *In re Broiler Chicken Grower Antitrust Litig.*, No. 06:20-MD-02977 (E.D. Okla. Feb. 18, 2022) (Dkt. No 531 at 4-5). The requested class representative service award is particularly justified here, where Plaintiff is the only class representative that stood up on behalf of the Class. *In re Loestrin 24 Fe Antitrust Litig.*, MDL No. 2472, 2020 WL 4035125, at *6, n.4 (D.R.I. July 17, 2020) (acknowledging that $100,000 service award to named plaintiff was higher than comparable cases but was appropriate, in part, because plaintiff was the sole class representative); *report and recommendation adopted*, 2020 WL 5203323 (Sept 1., 2020); *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07-cv-2898, et al., 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012) (finding $25,000 service award reasonable where "the record reflect[ed] that no class member was otherwise willing to serve as a named plaintiff for the settlement class").

Without Plaintiff's willingness to devote substantial resources to assist Class Counsel investigate and prosecute this matter, the Settlement Class would not have the benefit of the $1.73 million Settlement Fund, and in fact, there would be no recovery at all for the Class. Class Counsel Decl., Ex. 1 at ¶64. Class Counsel gave notice to Settlement Class Members that they would ask the Court to approve a $25,000 service award for Plaintiff as the class representative. Dkt. No. 77-1 at 81. Not a single member of the Settlement Class has objected to the requested service award.

Class Counsel Decl., Ex. 1 at ¶65. Accordingly, based on Plaintiff's substantial contributions to the success of this litigation, Class Counsel respectfully requests that the Court grant Plaintiff a $25,000 class representative service award.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court award Class Counsel attorneys' fees in the amount of $561,442.95, which is equivalent to 32.5% of the Settlement Fund, reimbursement of litigation expenses in the amount of $20,502.68, and a $25,000 class representative service award to Plaintiff for its considerable time, effort and invaluable contributions to the case. Submitted herewith for the Court's consideration is a proposed Order, attached as Exhibit 2, which is consistent with the requests made herein.

Dated: April 8, 2022

Respectfully submitted,

/s/ *Michael L. Silverman*
Michael L. Silverman
*msilverman@brunolawus.com*
Klint L. Bruno
*kbruno@brunolawus.com*
THE BRUNO FIRM, LLC
205 N. Michigan Avenue, Suite 810
Chicago, Illinois 60601
Telephone: 312.321.6481

/s/ *Steven A. Kanner*
Steven A. Kanner
*skanner@fklmlaw.com*
Michael J. Freed
*mfreed@fklmlaw.com*
Brian M. Hogan
*bhogan@fklmlaw.com*
FREED KANNER LONDON
& MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, Illinois 60015
Telephone: 224.632.4500

*Interim Co-Lead Class Counsel*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Support of Motion for Approval of Attorneys' Fees, Reimbursement of Expenses and Class Representative Service Award was filed this 8th day of April 2022 via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

/s/ *Michael L. Silverman*
Michael L. Silverman